# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| KIM M. STRICKLAND, PERSONAL REPRESENTATIVE AND ADMINISTRATOR OF THE ESTATE OF AARON A. COOPER, | ) ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 2:12CV00019 |
| v. | ) ) | **OPINION AND ORDER** |
| HAROLD W. CLARKE, ET AL., | ) ) | By: James P. Jones United States District Judge |
| Defendants. | ) | |

*Mary Lynn Tate, Tate Law PC, Abingdon, Virginia, for Plaintiff; Kate E. Dwyre and Lara Kate Jacobs Todd, Assistant Attorneys General, Office of the Attorney General of Virginia, Richmond, Virginia, for Defendants John Jabe, John S. Garman, Tracy Ray, Richard Rowlette, Leslie Fleming, Lafayette Fleming, James Bentley, J. Rick Wiandt, and Tony Adams; Cameron S. Bell, Penn, Stuart & Eskridge, Abingdon, Virginia, for Defendant Travis McCoy; and Joseph R. Carico, Carl E. McAfee, P.C., Norton, Virginia, for Defendants Tracy Gilmore (Baird), Brian Meade, Robert Mullins, and Heather Halsey.*

The plaintiff's decedent, Aaron A. Cooper, was murdered in 2010 by a fellow inmate at a Virginia prison. In this action under 42 U.S.C.A. § 1983 (West 2012), the plaintiff seeks money damages against certain state prison officials and employees on the ground that they violated the Eighth Amendment to the Constitution by their deliberate indifference to Cooper's safety. She asserts three separate claims: a failure to protect Cooper ("Count One"); supervisory liability based on indifference to or tacit authorization of the subordinate misconduct that

resulted in the failure to protect Cooper ("Count Two"); and a conspiracy to violate Cooper's civil rights ("Count Three").[1]  Following discovery, the defendants have now each moved for summary judgment in their favor on all counts.  For the following reasons, I will grant summary judgment in favor of all of the defendants.

I. FACTUAL BACKGROUND.

The following facts taken from the summary judgment record are either undisputed or, where disputed, are stated in the light most favorable to the plaintiff.

Robert C. Gleason, Jr., an inmate at Red Onion State Prison, located in this judicial district, murdered plaintiff's decedent Cooper on July 28, 2010.  Gleason was prosecuted for the murder, pleaded guilty, and was executed by the state in

---

[1] There is an additional Count Four, asserting a claim for wrongful death.  Section 1983 itself does not provide for the survival of a cause of action when a decedent's death is the result of a deprivation of federal rights, nor does it provide for survivorship claims.  Nonetheless, when federal law is "deficient in the provisions necessary to furnish suitable remedies and punish offenses against law," 42 U.S.C.A. § 1988(a) (West 2012), federal courts are directed to resort to state law "so far as the same is not inconsistent with the Constitution and laws of the United States."  *Id*.  The instant action thus survives pursuant to Virginia's wrongful death statute, Va. Code Ann. § 8.01-50 (Supp. 2013).  That statute does not generate a separate cause of action "but only a right of action in a personal representative to enforce the decedent's claim for any personal injury that caused death."  *Miller v. United States*, 932 F.2d 301, 303 (4th Cir. 1991).  Here the claim is under § 1983.  As such, the decision on the other counts is dispositive of Count Four.

2013, after this suit was filed.² He was deposed by the parties in the case a few weeks prior to his execution.³

The murder occurred in the following manner. The two inmates, confined in the prison's segregation unit, had been placed alone in adjoining locked recreation cages that shared a common wire fence. At some point, Cooper willingly allowed Gleason to place a noose, made from a braided length of bed sheet, around his neck through the fence. Gleason contended in his deposition that he had convinced Cooper to agree to the noose under the pretense that they were colluding to sue the prison authorities for a feigned attack on Cooper.⁴ Gleason then proceeded to strangle the unsuspecting Cooper to death against the shared fence.

Cooper and Gleason had been placed in the recreation cages by defendant Correctional Officers Brian Meade and Robert Mullins. Officers Heather Halsey and Jamie Burke⁵ were also assigned to Building A4-5, where both inmates were housed. Burke was stationed in a control room that overlooked the recreation cages and contained video monitors, and defendant Halsey was completing rounds

---

² *See Gleason v. Commonwealth*, 726 S.E.2d 351 (Va. 2012) (affirming sentence).

³ The transcript of Gleason's deposition, as well as those of certain of the defendants and their declarations and affidavits, have been made a part of the summary judgment record.

⁴ Gleason earlier claimed that he had convinced Cooper to try on a "religious necklace" in order to accomplish the murder. *Gleason,* 726 S.E.2d at 352.

⁵ Jamie Burke is not named as a defendant.

-3-

in the building, although she relieved Burke from his post at some point during her shift. Defendant Tracy Baird (also named Tracy Gilmore) was the Building Sergeant.

In 2009 Gleason had murdered another inmate, his cellmate Harvey Watson, Jr., at another state prison. In a court appearance related to the Watson murder, Gleason stated he would kill other inmates unless he was sentenced to death. He later told Major Leslie Fleming, the prison's Chief of Security, and Warden Tracy Ray, both defendants in this case, that he would kill again if he were not permitted to take recreation and shower time alone. On at least one occasion in mid-July 2010, inmate Martin Rodgers indicated to defendants J. Rick Wiandt, James Bentley, and Tony Adams that "there were going to be problems on the recreation yard."[6] (Adams Aff. ¶ 4, ECF No. 50-5.) Rodgers refused to comment further or give any more information as to what the problems were to be or who was to cause them, and Bentley reported Rodgers' statement to defendant Lieutenant Travis McCoy. Gleason, in his deposition, opined that prison officials "all knew what was going on." (Gleason Dep. 22:24, Jan. 3, 2013, ECF No. 75-1.) In addition, Gleason claimed that other inmates knew he intended to kill Cooper. Cooper, on the other hand, was not aware that he was in danger, and, in fact, he believed he

---

[6] Wiandt, Bentley, and Adams were employed as investigators. Wiandt did not work at the prison, but was only there to interview Rodgers on unrelated complaints. Bentley and Adams were employed in the prison's intelligence unit.

and Gleason were friends. Gleason indicated that, as late as June 2010, he had not intended to kill Cooper but instead another fellow inmate named Derek Darden.

On the day of the murder, after placing the two inmates in recreation cages at approximately 12:29 P.M., Officer Mullins went on lunch break, leaving Officers Halsey and Meade on the floor of Building A4-5. However, Meade was called to another building, and Halsey was then the sole officer on the floor while Cooper and Gleason were in the recreation cages. It is not clear whether Burke or Halsey were present in the control room at the time of the murder. Burke was stationed in the control room, but Halsey relieved him at some point and Gleason recalled that Halsey had been in the control room at the time of these events.[7] Gleason claimed that Halsey had opened a window overlooking the recreation

---

[7] Halsey testified in her deposition that she did not recall being in the control room while Gleason was there and did not see him again until after the murder, when she went to the recreation cage to return him to his cell and discovered Cooper's body. (Halsey Dep. 12:2-8, Oct. 17, 2013, ECF No. 90.) The control room "provides visual security" over three building "pods" and the recreation yard containing five recreation cages. (McCoy Decl. ¶ 5, Aug. 29, 2013, ECF No. 64-1.) Mullins testified in his deposition that Burke had been in the control room at the time of the murder, but indicated that the control room has only a limited view of the recreation yard. According to Mullins, at the time of the incident, the control room's cameras were placed such that there had been an obstructed view of the recreation cages. Furthermore, when officers observe the yard from the control room's window, they can see the entire recreation cage, but because the cages are roofed, "[i]f [the inmates are] up against the front of the cage, you can see their whole body. But if they go into the back, you can barely see their feet." (Mullins Dep. 68:23-25, Oct. 17, 2013, ECF No. 96.) Meade did not recall who had been in the control room at the time of the murder but remarked that "[i]t was the control room's responsibility to keep the check on the inmates in the yard." (Meade Dep. 27:21-22, Oct. 17, 2013, ECF No. 95.) At the time of the murder, staffing policy at the prison did not require that an officer be present on the recreation yard while inmates were present. (McCoy Decl. ¶ 5, Aug. 29, 2013, ECF No. 64-1.)

cages while the braided sheet was visible, but had closed it without taking any action. Accompanied by another officer, Halsey entered the recreation yard to return the inmates to their cells at approximately 1:50 P.M., and upon discovering Cooper's body, Halsey radioed Sergeant Gilmore and a medical unit. Soon after, defendant Lieutenant Lafayette Fleming entered the recreation yard, and defendant Lieutenant McCoy video recorded the scene. Although he recalled that McCoy laughed while recording, Gleason conceded that this was the extent of Fleming's and McCoy's involvement.

The plaintiff alleges that it was through a common practice of trading between officers and inmates that Gleason was able to secure what was necessary to murder Cooper:

> Gleason arranged for another inmate to make a braided necklace/noose. Gleason then conspired with Defendants Halsey, Meade, Mullins, Ball, and they with other defendants, to orchestrate a rec time without the required strip search, designation of the inmates Gleason wanted to be pulled for rec time with him and their placement in specific cages with Cooper placed next to him. Gleason and these defendants then conspired with defendants Lt. McCoy, Lt. Fleming, and Sergeant Gilmore and Three Unknown Correctional Officers to create the absences necessary for no officer to view or enter the rec yard during Gleason's project and to falsify the head count.

(Compl. ¶ 29, ECF No. 1.) Gleason's deposition serves as the sole evidentiary basis for these allegations. In his deposition testimony, Gleason claimed that, while engaged in trading, Halsey had instructed him to write down the names of inmates he wanted in the recreation cages, and she subsequently showed the list to

Meade and Mullins.[8] He indicated further that, in exchange for favors, he had not been searched fully before being taken by Meade and Mullins to the recreation cage, and because a proper search had not been conducted, he was able to conceal the braided sheet inside a long-sleeved shirt he had carried to the recreation cage. He opined that the officers had been motivated in part by dislike for Cooper, recalling their making light of his murder after the fact. After an internal investigation of the murder, Officers Meade, Mullins, Halsey, Stanley, and Baird faced prison disciplinary action for their failure to conduct a proper search of Gleason.

## II. STANDARD OF REVIEW.

Summary judgment is appropriate when there is no genuine dispute as to any material fact, given the parties' burdens of proof at trial. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court considers "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." *Id.* at 251 (internal quotation marks and citation

---

[8] Meade stated that inmates previously chose their own cage, but current policy requires that they go in order. Mullins similarly stated that inmates "just walk up to a cage. . . . [T]hey didn't have no specific place that they was put." (Mullins Dep. 51:09-12, Oct. 17, 2013, ECF No. 96.) However, Halsey testified that inmates are not allowed to pick their recreation cage but officers simply "put them in which of the next cage that's available." (Halsey Dep. 25:17-18, Oct. 17, 2013, ECF No. 90.)

omitted). As such, the burden is on the movant to demonstrate that the evidence "is so one-sided that [the movant] must prevail as a matter of law," *id.* at 252, and in determining whether the movant has satisfied that burden, a court must assess the factual evidence and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *See Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985), *overruled on other grounds*, *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989). "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). However, "neither unsupported speculation, nor evidence that is merely colorable or not significantly probative, will suffice to defeat a motion for summary judgment." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (internal quotations marks and citations omitted).

In a Motion to Strike the Motions for Summary Judgment, the plaintiff characterizes the defendants' supporting affidavits as "cookie cutter" and contends,

> [M]ore is required; otherwise defendants could do no discovery, lie in wait [until] shortly before 30 days prior to trial . . . and assert in a summary judgment motion that Plaintiff has *failed to come forward* with proof for any claims. This would turn the case on its head.

(Pl.'s Mot. to Strike 3, ECF No. 74.) The plaintiff argues that summary judgment is improper because the defendants "have not identified and negated any essential element of plaintiff's claims." (Pl.'s Resp. 3, ECF No. 75.) These contentions

misconstrue the law. "If the moving party would not bear the burden of proof at trial, its initial burden is met by 'pointing out' that the nonmoving party has not made a sufficient showing on an essential element of its case." *Wilkinson v. Rumsfeld*, 100 F. App'x 155, 157 (4th Cir. 2004) (unpublished); *see also Cray Commc'ns, Inc., v. Novatel Computer Sys., Inc.*, 33 F.3d 390, 393 (4th Cir. 1994) ("[U]nder *Celotex*, the moving party on a summary judgment motion need not produce evidence, but simply can argue that there is an absence of evidence by which the nonmovant can prove his case.") (internal quotation marks and citation omitted). Accordingly, the defendants need not produce evidence to negate an essential element of the plaintiff's claim but simply identify evidentiary inadequacies of that claim.

It is asserted on behalf of the defendants that there is insufficient evidence that they violated Cooper's federal rights and that in any event they are entitled to qualified immunity from suit under the circumstances. In determining qualified immunity, the court must decide (1) whether a constitutional right has been violated; and (2) whether that right was clearly established at the time of the violation. *Bland v. Roberts*, 730 F.3d 368, 391 (4th Cir. 2013). Moreover, "judges of the district courts and the courts of appeals [are] permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular

case at hand." *Pearson v. Callahan,* 555 U.S. 223, 236 (2009). In the present case, I find that an initial determination of whether a constitutional violation has been shown "will best facilitate the fair and efficient disposition of [this case]." *Id.* at 242.

Accordingly, the question is whether there is evidence such that a reasonable factfinder could conclude that the defendants, or any of them, violated Cooper's rights under the Eighth Amendment.

### III. DISCUSSION.

Count One of the Complaint alleges that the defendants violated the Eighth Amendment by failing to protect Cooper from Gleason while the inmates were detained in the adjacent recreation cages. Prison officials are indeed required by the Eighth Amendment "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal quotation marks and citation omitted). Prison officials are in violation of their duty to protect inmates when: (1) the deprivation suffered is "objectively, sufficiently serious," and (2) the officials had "a sufficiently culpable state of mind." *Id.* at 834 (internal quotation marks and citations omitted).

The defendants contend that the plaintiff has not satisfied her burden as to the state-of-mind requirement. An official's state of mind is sufficiently culpable

when, through deliberate indifference, that official "knows of and disregards an excessive risk to inmate health or safety . . . ." *Id*. at 837. "*Farmer*, and [the Fourth Circuit's] cases interpreting *Farmer*, make clear that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998). It is not enough to show that a defendant "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Farmer*, 511 U.S. at 844. A plaintiff has also failed to establish a defendant's deliberate indifference "where, although [the defendant] is aware of the existence of a general risk, he is unaware that his conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997).

In the instant case, the plaintiff has not produced evidence of the defendants' conduct such that a reasonable factfinder could conclude that the defendants inferred the existence of a substantial risk of harm to Cooper while placed in the recreation cage, and much less that they were aware that their conduct was inappropriate in light of that risk. Indeed, Cooper himself was unaware of the risk Gleason posed to him. Cooper even allowed Gleason to place the noose around his neck, and without his acquiescence, the risk of harm could not have existed where the two men were confined to separate recreation cages. The defendants do not

deny knowledge of Gleason's previous murder at another prison. However, Gleason's deposition testimony — the only evidence relied upon by the plaintiff concerning the defendants' states of mind — characterized the prison officials' attitudes as being explicitly dismissive of any such general risk:

> Well, Tracy Ray, the Major, and a lot of the staff said no one has ever been killed in segregation — first they said nobody's ever been killed at Red Onion. I said no, Joe Armstrong killed somebody. They said no, not in segregation. They were like it's not going to happen.

(Gleason Dep. 30:22-31:01, Jan. 3, 2013, ECF No. 75-1.) Gleason did aver generally that prison officials "all knew what was going on. And plus Martin Rogers [sic] gave them all a heads up." (*Id.* at 22:24-25.) However, Gleason provided no specific information beyond this conclusory statement, and Rodgers, when pressed, refused to provide pertinent information to Wiandt, Bentley, or Adams. Gleason also opined that some of the officers disliked Cooper, and this animus towards Cooper explained in part why he was able to arrange the murder. This speculation alone cannot be a sufficient evidentiary basis for a finding of deliberate indifference. Gleason's deposition testimony, by itself, is inadequate to support a finding that the defendants had a sufficiently culpable state of mind, and that testimony comprises the entirety of the evidence supporting the plaintiff's claims.[9] In turn, the defendants could not have known that their alleged conduct

---

[9] In her Complaint, the plaintiff alleges the existence of other supportive evidence, including a video of Gleason openly carrying the braided sheet onto the recreation yard,

and the trading that facilitated it was inappropriate in light of any risk to Cooper in the recreation cage. At most, the plaintiff's evidence demonstrates that some of the defendants may have been negligent, a standard that is insufficient to support this cause of action. *See Rich*, 129 F.3d at 339 (rejecting claim against prison official based upon attack by fellow inmate where trial court's findings showed negligence rather than "subjective recklessness").

Count Two seeks to impose supervisory liability upon defendants Jabe, Garman, Ray, Rowlette, Leslie Fleming, McCoy, and Baird for the alleged violations of their subordinates. However, "supervisors and municipalities cannot be liable under § 1983 without some predicate 'constitutional injury at the hands of the individual [state] officer,' at least in suits for damages." *Waybright v. Frederick Cnty., Md.*, 528 F.3d 199, 203 (4th Cir. 2008) (quoting *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)). Because there is insufficient evidence in the present case of a predicate constitutional violation, there is no basis for a supervisory liability claim. As such, the defendants' motions for summary judgment will be granted as to Count Two.

Count Three alleges a civil conspiracy among defendants Meade, Mullins, Halsey, Gilmore, and McCoy to violate Cooper's rights. To prevail, the plaintiff must show that these defendants "acted jointly in concert and that some overt act

---

as well as a falsified "standing head count,' but no such evidence was produced in opposition to the motions for summary judgment.

was done in furtherance of the conspiracy which resulted in [the] deprivation of a constitutional right." *Hinkle v. City of Clarksburg, W.Va.*, 81 F.3d 416, 421 (4th Cir. 1996). Even assuming there was a constitutional deprivation, there is simply no evidence that the defendants "positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." *Id*. The defendants' motions for summary judgment will also be granted as to Count Three.

IV. CONCLUSION.

There is no doubt that prison inmates are owed a duty of protection by their keepers under the Constitution and it is exceedingly distressing that Gleason was able to senselessly murder two fellow inmates, one after the other. Nevertheless, under the facts presented, I cannot find that any of the individual prison officials and employees sued here are legally culpable for Cooper's death. Accordingly, the defendants' Motions for Summary Judgment (ECF Nos. 49, 63, 86) are GRANTED as to all counts. The plaintiff's Motion to Strike (ECF No. 74) is DENIED. A separate final judgment will be entered in favor of all defendants and the case will be closed.[10]

It is so **ORDERED**.

---

[10] Defendants Sabrina Bell, referred to in the Complaint as "Ball (First Name Unknown) (female)" (Compl. 2), and Harold W. Clarke were earlier dismissed on motion of the plaintiff.

ENTER: January 13, 2014

/s/ James P. Jones
United States District Judge